They want to decumulate. They want to exercise that discretion to decumulate. They have to explain what their decision has to do with the purpose of accumulation. If you look on page 26 of our brief, for example, we cite a brief that they filed at the CIT in which they acknowledged that the hammering effect is a purpose of accumulation, but that they don't consider that as something that they necessarily have to address. That is the whole issue here. I'm sorry, where does it say that? It's on page 26 of our brief where we cite a brief that they filed at the Court of International Trade. That's the whole issue here. All we ask is that when they exercise this discretion to decumulate, once they've found there's going to be an overlap of competition, and once they've found that all the imports from every country are going to have a discernible adverse impact, give us an explanation about why the reasons on which you rely are relevant to the purposes of accumulation. Thank you. The case is submitted. The next case will be 097068. Hawkins will be the Secretary of Veterans Affairs. Mr. Morton. Yes, Your Honor. My name is Myers Morton. I'm from Knoxville, Tennessee. Elmer Hawkins is a Vietnam veteran who was exposed repeatedly to Agent Orange. He has very nasty ailments. It's difficult for him, and I've described it in my brief. He has a very difficult time. He filed a claim to be compensated 19 years ago. 19 years. And the VA, since that 19 years, have been disrespectful, have played games, and have ignored his rights to have his claim heard, to have his opportunity to have a decision made on whether or not his problems are connected with his exposure to Agent Orange. And if the court please, I respectfully suggest that the VA, or the DVA, is struggling to come to grips with the use of Agent Orange and what it does to these veterans. And they've decided they're not going to grant him compensation. They're going to let him die, and he will die. It's a severe statement, but that's just the 19 years indicates to me, if the court please, what has happened. And examples of things that the court have done, I mean, I'm sorry, that the Veterans Administration, the Department of Veterans Affairs, have done is they have taken tissue samples and refused to return them after years. They have cited studies anonymously and not provided those studies to Mr. Hawkins and me to determine if those studies supported him. Is that claim that the studies are confidential, or they're just not cited? First, initially, they cite general studies. Without specifying what it is? That's correct, Your Honor. And so one of our first appeals, I've had four mandamus petitions with the Court of Appeals for Veterans Claims. And what happens is I file my mandamus petition, I complain about the problems, and the VA responds. After I file a petition. I was driving up from Knoxville yesterday trying to think of an analogy on what the DVA does. And I came to one, when I'm driving up the interstate, everybody's going 70, 80, 90 miles an hour. They're going fast. Well, the state trooper pulls on, everybody goes 65. Everybody's calm, everybody's going according to the law. When the state trooper pulls off, everybody's back up. That's what this 19-year history of the VA does. When the court is involved, when the court is watching, they do what they're supposed to do. They answer my four mandamus petitions. I've also had three appeals on this case, this very case. And so what's happened in this latest appeal, the latest mandamus, the court, my complaints with the DVA on this mandamus was the DVA was refusing to let us know of status. They're refusing to provide to us results of medical examination of tissue samples that came from this veteran. They were ignoring my request. You want what their doctors said about your tissue samples. That's correct. And they would not, they will not do it. So I filed my fourth mandamus petition. They sent me a big box. Now, it's not in the record what they sent me, so I can't tell you what's absent from that box. The point being, when I file a mandamus petition, they act. So when you want, one of your things that you're wanting us to do is tell them to disclose files. Now, by that you mean what, the treatises, the results of examinations of the tissues? Yes, Your Honor. Those other things? The Court of Appeals for Veterans Claims told them that a dozen years ago. Mr. Morton? Yes, Your Honor. If this court started intervening in the veterans' administration processes and telling them they have to act faster on this claim and give them more information on that claim, wouldn't we, in effect, be intervening inappropriately in their process? Wouldn't we get thousands of people coming here requesting, please give them a jolt in my case? No, my case is first. No, my case ought to be first. How do we as a court judge which one ought to be first and which one ought to have more priority or less? Your Honor, I don't think it would be inappropriate for this court to make the DVA, faithfully execute what the laws are, which is pay these veterans. I'm sure they're making every effort to do so. I'm also sure that they make a lot of mistakes, like all human institutions. But I'm just trying to understand what standard you would give us for intervening in this case or that case, but not other cases, because that's really what you're asking us to do. Yes, Your Honor. and give them an order about how they do their job. This is the only case I'm familiar that's been pending for 19 years. I agree that there's a lot, although you don't, well, it would be impossible to show any intentional delay. I can't, no, Your Honor, no way. Yes, there's been remands and efforts. I'm sure they can point to legitimate efforts to try and help you along the way. But, again, you've asked for something we almost never do, and that's tell an agency how to do their job. If the court does nothing, this veteran's going to die, and he's not going to get anything. That's what's going to happen. But we have many such cases. I understand, Your Honor, and I'm representing Mr. Hawkins, and he's terribly ill, and unless the Court of Appeals for Veterans Claims is standing there with something pending, the VA will do nothing. Here's another example of what the DVA did. We had one manned damage petition. Well, the record doesn't show that they do nothing. It just shows that they're making an effort to find evidence, and it doesn't come up, so they remand, and there have been five remands, as I counted. I'm sorry, Your Honor, I misspoke when I said that. But one example is one of my manned damage petitions I filed requesting three or four different remedies, and one remedy was for the VA to take tissue samples and go test them, send them to armed forces. And so in a response to my manned damage petition, the DVA said, okay, we've scheduled surgery where we're going to take the samples, and we're going to send them to AFIP for them to investigate and look and see what the problem is. And based on that and some other things, the Court of Appeals for Veterans Claims dismissed the manned damage petition. You know what the DVA did with those samples? They stuck them in a drawer for a year. I sent letters. Where? What? Nothing. It sat in a drawer until my next manned damage petition. What would you suggest if you could ask for an order setting aside a merits determination? You want us to say this is service-connected. That would be one thing. But apart from that, what would you suggest? An order that they disclose specifically A, B, and C, an order that they abide by the remand instruction, and an order that they adjudicate the claim in what, X period of time, a time limit? What would you actually suggest if you could make a suggestion along those lines? Respectfully, I don't know initially. You're the judges, so. Well, you've got to say what you want. Well, first of all, we want service connection after 19 years. Okay, setting that aside. And then, you know, the board or the DVA, they've got a new name, DVA refuses to address an opinion from a doctor that says his maladies are caused by his exposure to Agent Orange. They're ignoring it. They're not even addressing it. Okay, but what are you asking for exactly? Would you say in a hortatory fashion, please hurry up here, or are you suggesting a specific time limit, specific things you want disclosed to you? Based on my experience, it's to grab hold of the DVA and don't let go. I mean, because once you let go, they're done with us until I file something else. I mean, practically, that's the only solution I see. The Court of Appeals for Veterans Claim may be able to. And there's cases where they hold on to jurisdiction and tell them to do something and then bring it back to the court. To answer your question, my only possible way to fathom a way for this to work, aside from service connection, is to make the DVA understand that this court or the Court of Appeals for Veterans Claim is watching over their shoulder because it's not going to stop. I mean, that's my experience. And the claims have been pending 19 years. I may have been doing it for 15 years. And they're starting their most recent decision. They've started this just recently.